**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

DOUGLAS LEE SKAGGS,                          :

      Plaintiff,                              :

vs.                                          :       CA 15-0318-C

CAROLYN W. COLVIN,                           :
Acting Commissioner of Social Security,
                               :

      Defendant.


**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 24 & 25 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the March 30, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 24 & 25 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of (Continued)

Plaintiff alleges disability due to degenerative disc disease of the lumbar spine, atrial fibrillation, anxiety, and personality disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2004.**
>
> **2.      The claimant has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> **3.      The claimant has the following severe impairments: atrial fibrillation, degenerative disc disease of the lumbar spine, anxiety disorder, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).**
>
> .      .      .
>
> **4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .      .      .
>
> **5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b).[2] The claimant is able to sit for 8 hours in an 8-hour day, stand or walk for 2 hours in an 8-hour day, and after sitting for 30**

---

appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.”))

[2]      These citations are to the definition of light work, not sedentary work, which is defined at 20 C.F.R. §§ 404.1567(a) and 416.967(a). *Compare, e.g.,* 20 C.F.R. § 404.1567(a) (2015) (“Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.”) *with* 20 C.F.R. § 404.1567(b) (“Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.”).

**minutes would need a position change for 2 minutes before going back to the original position. Work could continue through the position change. The claimant can frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds. The claimant can frequently push and pull arm and leg controls. The claimant can frequently stoop, kneel, crouch, crawl, balance, and ascend and descend stairs and ramps. The claimant cannot work at unprotected heights, around dangerous machinery, or operate automotive equipment. The claimant cannot work around vibrations, have concentrated exposure of 5 minutes or more to temperature extremes (the heat of a blow torch or the cold of a freezer), fumes, odors, or gases. The claimant must work in well-ventilated areas. The claimant can understand and carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations. The claimant can have occasional contact with the public, and work in close proximity to co-workers and supervisors, but would need to work independently. The claimant can have contact with supervisors and this contact may occur as frequently as once per hour. The claimant can occasionally adapt to changes in the work setting and maintain concentration and attention for 2 hours at a time. The claimant cannot climb ropes, ladders, or scaffolds.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that due to . . . his back pain, he is unable to work and is disabled. He alleges that he becomes out of breath and his right leg becomes numb when he has back pain. After careful consideration of the

evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged physical impairments, the claimant has received generally conservative treatment for his impairments. In addition, upon presenting to the emergency room for chest pain or a racing heart, he did not make any back pain complaints. Office records from Cardiology Associates show that the claimant presented for complaints of a racing heart and palpitations, but a Bruce Protocol treadmill test showed that the claimant was able to adequately exercise on the treadmill and that he was negative for ischemia.

The claimant's treatment records from Tri County Medical Center from 2010 and 2011 show that the claimant complained of back pain. At one visit, he presented with pain and used a cane. Nevertheless, generally upon examination, the claimant had no tenderness, normal gait, and negative straight leg raise tests at these visits.

The claimant presented to the emergency room at Atmore Community Hospital in 2010 and 2011 with chest pain, heart fluttering, and palpitations. Nevertheless, an X-ray of the claimant's chest in September 2011 showed negative findings. In addition, EKG reports from September 2011 and December 2011 showed negative findings. Atmore Community Hospital records from 2012 show that the claimant was diagnosed with atrial fibrillations and an ER X-ray from January 2012 showed that the claimant had some evidence of tachycardia.

Additional emergency room records from 2012 and 2013 show that the claimant presented for palpitations. Nevertheless, a chest X-ray from August 2012 showed that the claimant's heart size was normal.

Treatment records from West Florida Hospital showed that the claimant was admitted for one day for atrial fibrillation in May 2013 and that this was the only hospitalization upon presenting for chest pain or palpitations present in the record. A chest X-ray at this time showed no acute disease. At this time, the claimant reported that he had only had two episodes in the past seven years. The record shows that the claimant had consumed a large quantity of alcohol prior to the onset of his symptoms. An echocardiogram also showed normal left ventricular systolic function.

The claimant's treatment records from Tri County Medical Center in 2012 and 2013 show that the claimant continued to complain and present for back pain, and was diagnosed with chronic back pain. Despite pain complaints, the claimant generally had a normal gait, normal range of motion in his joints, no joint tenderness, no swelling, negative straight leg raises in 2012 and 2013.

The claimant presented to the emergency room in 2013 for chest pain, but Ativan improved his pain and symptoms and he was discharged shortly thereafter in stable condition.

In October 2013, the claimant was examined by Eyston Hunte, M.D. At the examination, the claimant reported that his cane was self-prescribed. Upon examination, the claimant had full grip strength, no C-spine tenderness and a normal range of motion. He had an erect walk with only a limp on his right side. While the claimant did not squat or toe walk, he was able to heel walk normally. He had a positive straight leg raise test. Nevertheless, the claimant reported being able to perform activities of daily living. He was diagnosed with chronic pain syndrome with degenerative disc disease of the lumbar spine. Dr. Hunte was suspicious of a herniated disc; however, subsequent lumbar xrays revealed only minimal end plate osteophyte at the L4-L5 level.

At a consultative examination by Ritesh Gupta, M.D., a cardiologist, in December 2013, the claimant had a normal gait and no edema. In addition, his neurological was normal. He did not exhibit any shortness of breath. An EKG showed normal findings as well.

.     .     .

After considering the entire record of evidence, the undersigned finds that the above residual functional capacity accommodates the claimant's physical and mental impairments. Specifically, the reduction to less than a full range of sedentary work accommodates the claimant's atrial fibrillation and degenerative disc disease of the lumbar spine. The claimant is limited to unskilled work with occasional contact with the public in light of his anxiety and personality disorder.

.     .     .

The opinion of Sandeep Bhadkamkar, M.D. is given little weight because it is not consistent with the claimant's treatment examination findings that the claimant had no tenderness, a normal gait, and negative straight leg raise generally, as well as the lack of objective evidence showing disease or abnormality of the claimant's heart. Moreover, this opinion is inconsistent with the objective X-ray evidence showing only mild findings.

The opinion of Dr. Hunte is given little weight in that his opinion is inconsistent with the claimant's longitudinal treatment evidence showing generally negative straight leg raise, no tenderness, normal gait, and conservative treatment of his impairments. Moreover, this opinion is inconsistent with the objective X-ray evidence showing only mild findings.

5

The opinion of Dr. Gupta is given significant weight because it is generally consistent with his examination findings, the examination findings in the longitudinal treatment records, objective evidence showing generally normal findings, and the claimant's report of his ability to perform activities of daily living.

.    .    .

In regards to the claimant's credibility, after evaluation of the medical evidence and the claimant's statements, the undersigned finds that the claimant's allegations regarding his physical and mental limitations and being disabled are not wholly credible. The undersigned has considered the objective medical evidence (sign[s] and laboratory findings); medical treatment history; medical opinions and observations; opinions of non-examining medical sources; the claimant's daily activities; the location, duration, frequency, and intensity of his pain and other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of medication; treatment other than medication; other measures; consistency of statements; observations of non-medical persons; and the claimant's work history in assessing the claimant's credibility.

After reviewing the entire record, the undersigned concludes that the claimant is not fully credible, as there is little objective medical evidence to support his severe allegations. The medical evidence does not establish pain or limitation of the level and severity that would result in debilitating limitations. Despite his pain complaints and alleged limitations, the treatment records show consistent generally normal findings in that the claimant had a normal gait, no edema, full range of motion, and generally normal straight leg raises. Moreover, while the claimant used a cane, it was self-prescribed, as admitted by the claimant at a consultative examination. In addition, a spine X-ray showed mild findings. As for the claimant's atrial fibrillation, generally the claimant had a normal EKG, had a normal chest X-ray, and was only hospitalized once for this impairment, and this hospitalization came after he consumed a large quantity of alcohol. . . . Therefore, the claimant's allegations are not wholly credible.

In sum, the above residual functional capacity assessment is supported by the longitudinal treatment records, the objective X-ray evidence, the objective EKG evidence, and the examination findings of . . . Dr. Gupta.

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.    .    .

7.      The claimant was born on April 2, 1976 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

.       .       .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as: surveillance systems monitor (DOT 379.367-010) which is sedentary unskilled work with approximately 900,000 jobs in the national economy; order clerk (DOT 249.362-026) which is sedentary unskilled work with approximately 850,000 jobs in the national economy; assembler inspector (DOT 762.687-014) which is sedentary unskilled work with approximately 425,000 jobs in the national economy; and assembler (DOT 723.684-018) which is sedentary unskilled work with approximately 400,000 jobs in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that while the vocational expert's testimony is not consistent with Dictionary of Occupational Titles, specifically in light of the position change option, that in light of the expert's experience and training in the field of vocational placement for over 30 years, his testimony is credible and accepted.

.       .       .

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of

making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 71, 73-75, 75, 75-76, 76, 76-77, 78 & 79 (internal citations omitted; emphasis in original).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Security*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant establishes that he cannot perform his past relevant work, as here, it becomes

---

[3]       "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he retains the residual functional capacity to perform less than the full range of light (or sedentary) work but can perform those jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Skaggs asserts two reasons why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1)

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

the ALJ erred in failing to provide good reasons for discounting the opinions of the treating physician, Dr. Bhadkamkar, and the consultative examiner, Dr. Eyston Hunte, and also erred in assigning "significant weight" to the opinion of the examining cardiologist, Dr. Ritesh Gupta, without explaining why she did not incorporate portions of Dr. Gupta's opinion into her RFC finding; and (2) the ALJ committed reversible error by failing to link her RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical requirements of work. The undersigned considers these claims together within the context of the ALJ's RFC assessment.

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c),

416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to sit for 8 hours in an 8-hour day, stand or walk for 2 hours in an 8-hour day, and after sitting for 30 minutes would need a position change for 2 minutes before going back to the original position. Work could continue through the position change. The claimant can frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds. The claimant can frequently push and pull arm and leg controls. The claimant can frequently stoop, kneel, crouch, crawl, balance, and ascend and descend stairs and ramps. The claimant cannot work at unprotected heights, around dangerous machinery, or operate automotive equipment. The claimant cannot work around vibrations, have concentrated exposure of 5 minutes or more to temperature extremes (the heat of a blow torch or the cold of a freezer), fumes, odors, or gases. The claimant must work in well-ventilated areas. The claimant can understand and carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations. The claimant can have occasional contact with the public, and work in close proximity to co-workers and supervisors, but would need to work independently. The claimant can have contact with supervisors and this contact may occur as frequently as once per hour. The claimant can occasionally adapt to changes in the work setting and maintain concentration and attention for 2 hours at a time. The claimant cannot climb ropes, ladders, or scaffolds.**" (Tr. 73 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial

record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court

---

[5]        It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue,* 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, even if this Court was to find that the ALJ properly accorded only little weight to the RFC opinions of Drs. Bhadkamkar and Hunte and properly accorded significant weight to the RFC opinion of Dr. Gupta, the ALJ's RFC assessment cannot be found to be supported by substantial evidence inasmuch as the ALJ does not explain, when summarizing the evidence of record, how the medical evidence supports each component of her RFC assessment. A significant contributing factor to the linkage problem in this particular case is the ALJ's inability to decide whether Skaggs retains the RFC to perform light work or sedentary work. (*Compare* Tr. 73 *with* Tr. 75 & 78.) Indeed, the ALJ's RFC assessment confusingly references both levels of work in the initial sentence (*see* Tr. 73 ("**[T]he undersigned finds that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b).**"[6])) but then seems to settle on light work based upon the lifting and carrying component of the assessment (*id.* ("**The claimant can**

---

[6]      As explain above, 20 C.F.R. §§ 404.1567(b) and 416.967(b) define the requirements for the full range of light work.

**frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds.**"[7])[8]) and at the end of her opinion when accepting the vocational expert's identification of jobs in the national economy that Skaggs is capable of performing (Tr. 78 ("If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert[9] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (footnote added))). However, in the penultimate part of her decision where this Court would expect the ALJ to link her RFC assessment to evidence in the record

---

[7]      The ability to frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds is consistent with light work. *See, e.g.,* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

[8]      The ALJ's sitting, standing and walking findings (*see* Tr. 73 ("**The claimant is able to sit for 8 hours in an 8-hour day, stand or walk for 2 hours in an 8-hour day, and after sitting for 30 minutes would need a position change for 2 minutes before going back to the original position.**")) are, of course, more consistent with the definition of sedentary work. *Compare* 20 C.F.R. § 404.1567(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.") *with* SSR 83-10 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

[9]      Another layer of confusion in this case was added by the VE. The VE testified that the jobs of assembler inspector (DOT 762.687-014) and assembler (DOT 723.684-018) are sedentary, unskilled jobs (*compare* Tr. 31 *with* Tr. 78), even though the DOT clearly describes these jobs as falling within the light exertional category. *Compare* DICTIONARY OF OCCUPATIONAL TITLES 762.687-014 (box inspector is light work) *with* DICTIONARY OF OCCUPATIONAL TITLES 723.684-018 (assembler II is light work).

regarding Skaggs' abilities to sit, stand, walk, lift and carry weight, etc., the ALJ, instead, simply states: "[T]he reduction to *less than a full range of sedentary work* accommodates the claimant's atrial fibrillation and degenerative disc disease of the lumbar spine." (Tr. 75 (emphasis supplied).) Accordingly, in a general and broad sense the Court is unsure whether the ALJ's RFC assessment is for less than a full range of light work or less than a full range of sedentary work. And partly because of this broad problem but also regardless of this broad issue, the ALJ in this case simply did not link the specific components of her RFC assessment to evidence in the record regarding the claimant's ability to sit, stand, walk, lift and carry weight, push and pull arm and leg controls, stoop, kneel, crouch, crawl, balance, etc. For instance, the ALJ does not point to evidence in the record which establishes that Skaggs can sit for 8 hours out of an 8-hour workday, or frequently stoop, kneel, crouch, crawl, balance, and ascend and descend stairs and ramps, and this Court cannot find such evidence, particularly since none of the doctors who actually examined plaintiff and offered an opinion indicated that plaintiff can sit for 8 hours out of an 8-hour workday, or frequently stoop, kneel, crouch, crawl, balance, and ascend and descend stairs and ramps (*compare, e.g.,* Tr. 603 & 605 *with* Tr. 625 & 627), and nothing about the numerous positive findings made by Dr. Hunte (*see* Tr. 608 & 610-611 (neurological testing revealed weakness in the right leg, there was tenderness over the lower lumbar area, positive straight leg raising, impaired flexion, extension and rotation of the dorsolumbar spine, muscle strength testing of the lower extremities revealed the right 4 flexors and extensors RLE weaker than the left, a right foot drop with weakness in the right foot flexors, and the right thigh slightly smaller than the left, he walked with a significant limp on the right, and an inability to squat or toe walk)) support the ALJ's sit, stoop, kneel, crouch, crawl, etc., RFC findings. Certainly, the ALJ does not mean to suggest that she can throw the baby out with the

15

bath water and ignore the objective examination findings of Dr. Hunte simply because

he has effectively rejected the examining physician's RFC opinion.[10] Accordingly, the

undersigned finds that the ALJ's RFC assessment fails to provide an articulated linkage

to the medical evidence of record,[11] and, therefore, this cause need be remanded to the

Commissioner of Social Security for further consideration not inconsistent with this

decision. Stated somewhat differently, based upon the foregoing "general" and more

"specific" problems associated with the ALJ's RFC determination, the ALJ has failed to

---

[10] Without digressing too much into the ALJ's analysis of the RFC opinions of the two examining physicians the Administration referred Skaggs to, that is, Drs. Hunte and Gupta, the undersigned does find extremely interesting the decision to afford much more weight to the opinion of Dr. Gupta, a cardiologist who primarily focused on plaintiff's back impairment when completing the form without doing more than a perfunctory examination of Skaggs' back, instead of that of Dr. Hunte, a family practitioner who performed an extensive examination of plaintiff's entire body habitus, including his lower extremities and back. Moreover, any suggestion by the ALJ that plaintiff does not have a herniated disc, in light of lumbar x-rays showing only minimal endplate osteophyte at the L4-L5 level (*see* Tr. 75 ("Dr. Hunte was suspicious of a herniated disc; however, subsequent lumbar xrays revealed only minimal endplate osteophyte at the L4-L5 level.")), is a bit ambitious since the only test available to rule out a disc herniation is an MRI. *Compare Ward v. Astrue*, 2010 WL 2925798, *3 & 4 (N.D. Fla. Jun. 18, 2010) (after obtaining x-rays, doctor recommended a lumbar MRI to rule out herniated disk), *report & recommendation adopted*, 2010 WL 2925802 (N.D. Fla. Jul. 23, 2010), *with McCastler v. Commissioner of Social Security*, 2009 WL 691147, *2 (M.D. Fla. Mar. 16, 2009) (MRI recommended to rule out disc herniation); *see generally Hobbs v. United States*, 2015 WL 4641507, *4 (N.D. Ala. Aug. 4, 2015) (medical staff requested an MRI to rule out a herniated disc).

[11] The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)). Thus, by failing to "show his work," the ALJ has not provided the required "linkage" between the record evidence and his RFC determination necessary to facilitate this Court's meaningful review of his decision.

provide this Court with sufficient reasoning for determining that the proper legal analysis has been conducted.[12]

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 9th day of May, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[12]     This Court would also be remiss in failing to note that in evaluating plaintiff's complaints of pain, the ALJ's actual analysis focused solely on the objective medical evidence of record. (*See* Tr. 77; *compare id. with id.* at 76.) In other words, the ALJ in no manner attempted to "analyze" the other factors/evidence set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c) (*compare* Tr. 76 *with* Tr. 77 (ALJ made mention of the other factors but performed no analysis of those factors)). *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) ("When evaluating a claimant's subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" (emphasis supplied)); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)). This additional error can be addressed by the ALJ on remand.